IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LANELL CRAFT, CURTIS FLOWERS, JOE GANT, SHARON WILKINS, individually, and on behalf of RASHI GANT, MARCUS JORDAN, DAVID STEWART, LARRY WILKINS, MARY WILKINS, SHARON GANT, JOSEPH WILKINS, and HENRY-ELLA WILLIAMS<br><br>    Plaintiffs,<br><br>    v.<br><br>COREY FLAGG, EURAL BLACK, DAREK HAYNES, BRODERICK JONES, SERGEANT ROBERT O'NEIL, OFFICER WILLIAM MULLEN STAR NO.12673, OFFICER SHANNON STAR NO. 16066, OFFICER HEIN, STAR NO. 19700, OFFICER WASZAK STAR NO. 19258, OFFICER WOJTAN STAR N O. 8548, OFFICER SANELLO 17661 and the CITY OF CHICAGO,<br><br>    Defendants. | No. 06 C 1451<br><br>JUDGE GETTLEMAN<br><br>MAGISTRAGE JUDGE KEYS |

**PLAINTIFFS' FOURTH
AMENDED COMPLAINT AT LAW**

NOW COME the PLAINTIFFS, by and through the LAW OFFICES OF BLAKE

HORWITZ, LTD., and pursuant to this Fourth Amended Complaint at Law, state the following

against the above named DEFENDANTS, to wit COREY FLAGG, EURAL BLACK, DAREK

HAYNES, BRODERICK JONES (DEFENDANT OFFICERS #1), SERGEANT ROBERT

O'NEIL, OFFICER WILLIAM MULLEN, OFFICER SHANNON, OFFICER HEIN, OFFICER

WASZAK, OFFICER WOJTAN, OFFICER SANELLO (DEFENDANT OFFICERS #2) and the

CITY OF CHICAGO:

## JURISDICTION

1.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §

1983, 18 U.S.C. §1961, et seq; the Judicial Code, 28 U.S.C. §1331 and §1343(a); the

Constitution of the United States; and this Court's supplementary jurisdiction powers.

## INTRODUCTION

2.      This is a cause of action seeking damages for the misconduct of certain police officers for

the City of Chicago through, *inter alia,* a pattern of racketeering activity against the

PLAINTIFFS.  For RICO purposes, the acts of misconduct committed by a group of Chicago

Officers referred to as DEFENDANT OFFICERS #1 (explained *infra*) include, but are not

limited to: intimidation of witnesses, extortion and drug possession.  Traditional 42 U.S.C. §

1983 police misconduct claims are also plead against said officers, to wit: false arrest, excessive

force, deprivation of due process and violations of the Fourth and Fourteenth Amendment of the

United States Constitution.

3.      Another group of officers, DEFENDANT OFFICERS #2 (explained *infra*) are not part of

the RICO action but do have, as well, traditional 42 U.S.C. § 1983 police misconduct claims

lodged against them.

4.      DEFENDANT OFFICERS #1 and DEFENDANT OFFICERS #2 (explained *infra)* are

being sued in their individual capacities.

## PARTIES

5.      PLAINTIFFS LANELL CRAFT is a resident of the State of Illinois and a citizen of the

United States.

6.      SHARON GANT is a resident of State of Illinois and citizens of the United States.

2

7.      PLAINTIFF CURTIS FLOWERS is a resident of the State of Illinois and a citizen of the United States.

8.      PLAINTIFF JOE GANT is a resident of the State of Illinois and a citizen of the United States.

9.      PLAINTIFF RASHI GANT is a resident of the State of Illinois and a citizen of the United States.

10.     PLAINTIFF MARCUS JORDAN is a resident of the State of Illinois and a citizen of the United States.

11.     PLAINTIFF DAVID STEWART is a resident of the State of Illinois and a citizen of the United States.

12.     PLAINTIFF LARRY WILKINS is a resident of the State of Illinois and a citizen of the United States.

13.     PLAINTIFF MARY WILKINS is a resident of the State of Illinois and a citizen of the United States.

14.     PLAINTIFF SHARON WILKINS is a resident of the State of Illinois and a citizen of the United States.

15.     PLAINTIFF JOSEPH WILKINS is a resident of the State of Illinois and a citizen of the United States.

16.     PLAINTIFF HENRY-ELLA WILLIAMS is a resident of the State of Illinois and a citizen of the United States.

17.     All of the DEFENDANT OFFICERS were at all times relevant hereto officers of the CITY OF CHICAGO.

18.     At all relevant times to this complaint, DEFENDANT OFFICERS #1 and DEFENDANT

OFFICERS #2 were on duty and duly appointed and sworn police officers for the CITY OF

CHICAGO.  The DEFENDANT OFFICERS #1 and #2 engaged in the conduct complained of,

on said dates, in the course and scope of their employment and while they were on duty.  The

DEFENDANT OFFICERS#1 and #2 are sued in their individual capacity.

19.     The CITY OF CHICAGO is a duly incorporated municipal corporation and is the

employer and principal of DEFENDANT OFFICERS #1 and #2 as well as the other officers

referred to in this Complaint, as indicated in the *Monell* claim alleged herein.  At all times

material to this complaint, the DEFENDANT OFFICERS #1 and #2 were acting under color of

state law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

## ALLEGATIONS OF MISCONDUCT

20.     DEFENDANT OFFICERS #1 formed a cell of individuals who, while working for the

CITY OF CHICAGO, used the power of their office to generate revenue and acquire controlled

substances.

21.     The above-referenced cell constituted an enterprise, pursuant to 18 U.S.C.A. § 1961, in

that it was a group of individuals associated in fact although not a legal entity.

22.     One scheme used by DEFENDANT OFFICERS #1, *inter alia*, was to engage in and/or

attempt to engage in drug transactions whereby DEFENDANT OFFICERS #1 would lure

unsuspecting drug dealers to participate in drug transaction(s) and then take and/or attempt to

take their money and drugs, in a phony sting-type operation.

23.     Another scheme used by DEFENDANT OFFICERS #1 utilized false arrest, excessive

force and extortion: causing innocent civilians to believe that they were going to be charged with

4

crimes (*e.g.* drug possession) if they did not hand over money. If the innocent civilian(s) tendered the money to the officer(s), then he/she would not be arrested for a crime.

24.     DEFENDANT OFFICERS #1 used the power of their office to realize this scheme, arresting and/or threatening to arrest innocent civilian(s) in the event of non-compliance. These OFFICERS would use force and tools (*e.g.* handcuffs, weapons) provided to them by the CITY OF CHICAGO to facilitate this scheme.

25.     The latter scheme was utilized by DEFENDANT OFFICERS #1, most notably through DEFENDANT FLAGG, to extort substantial sums of money from the PLAINTIFFS to this cause. Upon information and belief, from approximately January 2004 to approximately January 28, 2005, DEFENDANT FLAGG, as an agent for DEFENDANT OFFICERS #1 and at times, upon information and belief, with DEFENDANT OFFICERS #1, entered the home of the PLAINTIFFS and ordered them to immediately tender money to DEFENDANT FLAGG.

26.     DEFENDANT FLAGG, as an agent for and with DEFENDANT OFFICERS #1 and to bring revenues to the enterprise, would enter PLAINTIFFS' home, handcuff innocent family members, throw them on the ground, and coerce money from them with the express threat of official arrest and the lodging of criminal charges (drug possession) if money was not tendered to DEFENDANT FLAGG immediately.

27.     DEFENDANT FLAGG, as an agent for and with DEFENDANT OFFICERS #1, would come to the home of the PLAINTIFFS at a time when he knew that PLAINTIFFS had just received social security checks and/or checks for salaried employment, knowing that this was a time to reap significant financial return given the increased moneys at the home of the PLAINTIFFS.

28.     DEFENDANT OFFICERS #1 participated in these schemes to intimidate, arrest, and extort money out of innocent civilians living in the City of Chicago.

29.     As part and parcel of the scheme of extortion, the DEFENDANT OFFICERS #1, from July 2004 to December 2004, conspired with each other knowingly and intentionally with the intent to distribute controlled substances, namely, five kilograms of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance.  This was done in furtherance of a conspiracy by DEFENDANT OFFICERS #1 to generate income for themselves so that they can continue to perpetuate their illegal activity as a group enterprise.

30.     On July 21, 2004, DEFENDANTS JONES, FLAGG and BLACK attempted to rip-off[1] five kilograms of cocaine; on August 16, 2004, DEFENDANTS JONES and FLAGG ripped-off drugs and/or money; on September 4, 2004, DEFENDANTS JONES and FLAGG attempted to rip-off at least two kilograms of cocaine and $10,000; and on September 8, 2004, DEFENDANTS JONES, FLAGG and HAYNES attempted to rip-off at least three kilograms of cocaine and at least $50,000.

31.     This conduct is further evidence of the scheme, conspiratorial conduct and collective thought processes of DEFENDANT OFFICERS #1.

32.     A specific example of misconduct involving cocaine with regard to DEFENDANT FLAGG, as the agent for his collaborators, concerns the case of PLAINTIFF LARRY WILKINS.

33.     On August 6, 2004, DEFENDANT FLAGG caused PLAINTIFF LARRY WILKINS to be charged with, *inter alia,* possession of cocaine by planting said cocaine on his person and/or

---

[1] Rip-off is the term used by the United States Attorneys in the plea agreements for Defendants Flagg, Jones, and Haynes to describe the thefts and attempted thefts to which these defendants pled guilty.

in his home. PLAINTIFF LARRY WILKINS did not possess the cocaine prior to DEFENDANT FLAGG placing it on his person and/or in his home.

34.    DEFENDANT FLAGG, as part of the scheme and enterprise referenced above, told PLAINTIFFS on many occasions that if any of them alerted authorities to the acts of misconduct perpetrated by DEFENDANT FLAGG (i.e. extortion, planting of drugs, false arrest, excessive force, etc.); DEFENDANT FLAGG would cause them to be charged with criminal activity.

35.    The above-referenced conduct amounted to witness tampering, in violation of 18 U.S.C. §1512, in that DEFENDANT FLAGG knowingly used intimidation, threatened, or corruptly persuaded PLAINTIFFS, or attempted to do so, or engaged in misleading conduct toward PLAINTIFFS, with intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense.

36.    The above pattern and practice undertaken by the enterprise to engage in this illegal behavior occurred continuously on or about January 2004 to on or about January 2005.

37.    DEFENDANT OFFICERS #1 by and through their positions as police officers for the CITY OF CHICAGO participated in the conduct complained of through a pattern of racketeering activity and conspired among themselves and others.

38.    By engaging in racketeering activity, DEFENDANT OFFICERS #1 violated 18 U.S.C. § 1962.

39.    By conducting racketeering activity as described above, DEFENDANT OFFICERS #1 violated the following criminal laws: Conspiracy to Distribute Controlled Substances Containing Cocaine in Violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; Possession of Cocaine with Intent to

Distribute in violation of 21 U.S.C. § 841(a)(1); Extortion, in violation of 18 U.S.C. § 1951; and Witness Tampering, in violation of 18 U.S.C. § 1512.

40.    In relation to the PLAINTIFFS to this cause, DEFENDANT OFFICERS #1 engaged in this activity while in the scope and course of their employment.

41.    The conduct of DEFENDANT OFFICERS #1 amounted to an unreasonable seizure of the PLAINTIFFS in violation of the Fourth Amendment to the United States Constitution.

42.    The conduct of DEFENDANT OFFICERS #1 amounted to a deprivation of due process in violation of the 14th Amendment to the United States Constitution.

43.    On various dates, from on or about January 2004 to on or about January 2005, some of the members of DEFENDANT OFFICERS #1 physically assaulted PLAINTIFFS, either individually and/or with others.  This conduct constituted an unreasonable seizure of PLAINTIFFS in violation of the Fourth Amendment to the United States Constitution.

44.    On or about January 2004 to on or about January 28, 2005, PLAINTIFFS did not obstruct justice, resist arrest and/or batter and/or assault any of the members of the group containing DEFENDANT OFFICERS #1.

45.    The use of force initiated by DEFENDANT OFFICERS #1 and the failure to intervene in the use of said force, caused an excessive amount of force to be inflicted onto the body of PLAINTIFFS.  Said force was unreasonable and unnecessary.

46.    DEFENDANT OFFICERS #1 also conspired to injure PLAINTIFFS by agreeing not to report each other after witnessing illegal conduct of the DEFENDANT OFFICERS #1; and/or by generating false documentation to cover-up for their own misconduct.

47.    In connection with the above conspiracy, DEFENDANT OFFICERS #1 specifically engaged in communication on or about the date of the various seizures/home invasions of the

PLAINTIFFS, as alleged *supra*, whereby DEFENDANT OFFICERS #1 agreed to facilitate, engage in and support the activity which occurred in connection with the allegations immediately above. As a result of this conspiracy, the DEFENDANT OFFICERS #1, by and through their conduct, proximately caused PLAINTIFFS to incur financial loss and suffer emotional damage.

48.     As a direct and proximate result of one or more of the aforesaid acts or omissions of DEFENDANT OFFICERS #1, PLAINTIFFS were caused to suffer pain, suffering and mental anguish both now and in the future.

## MISCONDUCT BY CHICAGO OFFICERS (DEFENDANT OFFICERS #2 AND COREY FLAGG) WHICH OCCURRED ON AUGUST 6, 2004

49.     DEFENDANT OFFICERS #2 were involved, with COREY FLAGG, in an August 6, 2004 seizure and detention of plaintiff LARRY WILKINS. Said seizure violated, *inter alia,* the Fourth Amendment to the United States Constitution as it occurred without probable cause.

50.     DEFENDANT OFFICERS #2 and COREY FLAGG knew that there was no probable cause to arrest LARRY WILKINS, as LARRY WILKINS did not possess contraband on said date.

51.     DEFENDANT OFFICERS #2 were aware that contraband in the form of cocaine and guns were planted on LARRY WILKINS by, upon information and belief, COREY FLAGG.

52.     During the unlawful arrest of Plaintiff LARRY WILKINS, the other PLAINTIFFS were detained and seized by DEFENDANT OFFICERS #2 in violation of the Fourth Amendment of the Constitution of the United States. The seizure was unlawful as there was no probable cause to detain and/or seize said individuals.

53.     LARRY WILKINS was released after an approximate 8-month jail term. Upon release, the charges relative to the August 6, 2004 arrest were dismissed. This incarceration was

proximately caused by the illegal conduct of the DEFENDANT OFFICERS #2 and COREY FLAGG.

54.     The aforementioned actions of COREY FLAGG and DEFENDANT OFFICERS #2 were the direct and proximate cause of the constitutional violations set forth above.

<u>**RESOLUTION OF CRIMINAL CHARGES**</u>

55.     Since the filing of the First Amended Complaint, DEFENDANT OFFICERS #1 have pled or been found guilty for their misconduct, as identified below.  These findings further demonstrate the conspiratorial acts of said officers, their pattern of misconduct, and connection to the injuries suffered by the PLAINTIFFS to this cause.

56.     Chicago Police Officer BRODERICK JONES has pled guilty, in Federal Court, before the Honorable Judge Guzman, of engaging in multiple acts of racketeering activity, to wit: possession of cocaine with the intent to distribute, robbery and extortion.

57.     In his plea of guilty, BRODERICK JONES admitted that he committed robbery, extortion and possession of cocaine with the intent to distribute, while he was working for the Chicago Police Department and while he was acting in the capacity of a Chicago Police Officer. He also admitted to undertaking these efforts from 1999 through March 2005.

58.     Chicago Police Officer COREY FLAGG pled guilty, before the Honorable Judge Guzman, in Federal Court, to having conspired, along with Chicago Police Officers EURAL BLACK, DAREK HAYNES, BRODERICK JONES and others, to intentionally possessing and distributing cocaine and marijuana.

59.     COREY FLAGG pled guilty to having worked with EURAL BLACK, DAREK HAYNES and BRODERICK JONES to obtain cocaine, marijuana and drug money, through robbery and extortion.

60.     COREY FLAGG, in his plea of guilty, stated that he understood that any cocaine and marijuana obtained during the course of his criminal efforts would be distributed to the people he was criminally involved with (i.e. EURAL BLACK, DAREK HAYNES and BRODERICK JONES).

61.     COREY FLAGG admitted, in his plea agreement, that while he was a Chicago Police Officer, he knew that BRODERICK JONES recruited Chicago Police Officers, including himself and Officer Haynes, to conduct vehicle stops and home invasions in order to illegally obtain drugs, money and weapons.

62.     COREY FLAGG, in his plea of guilty, recognized that he and other Chicago Police Officers used their power, authority and official positions as Chicago Police Officers to promote and protect their illegal activities, as mentioned above.

63.     EURAL BLACK, previously a Chicago Police Officer, was found guilty of the following, by a Jury, in the City of Chicago, before the Honorable Judge Guzman:

  a.  attempting to conspire and distribute controlled substances;

  b.  multiple acts of robbery and racketeering;

  c.  the procurement of weapons from individuals through robbery and extortion;

  d.  recruiting Chicago Police Officers to conduct vehicle stops and home invasions of others to illegally obtain money, weapons and controlled substances;

  e.  delivering controlled substances in exchange for cash;

  f.  not enforcing the law with individuals that he was involved so that he could promote criminal activity;

g.  along with EURAL BLACK, COREY FLAGG,
DAREK HAYNES and non-Chicago Police
Officers, distributing cocaine (up to 5 kilograms);

h.  distributing cocaine in exchange for cash;

i.  conducting home invasions of individuals (along
with COREY FLAGG, EURAL BLACK and
DAREK HAYNES) for the purpose of obtaining
money, property, weapons and controlled
substances;.

j.  using the power of his office as a Chicago Police
Officer to engage in the above (a-i) acts;

k.  using the facilities of the Chicago Police
Department, namely his badge, gun, bullet proof
vest and handcuffs, to promote his illegal activity
(a-i).

### *MONELL* ALLEGATIONS

64.  It is the custom, practice and/or policy of police officers and/or their supervisors/agents

and/or other employees of the CITY OF CHICAGO to perform the following acts and/or

omissions:

a.  generate false documentation to cover-up for the misconduct
of fellow police officers;

b.  engage in acts of false arrest, fabrication of evidence,
malicious prosecution, misrepresentation of facts, significant
intrusions to the body of innocent citizens, excessive force, and/or
serious acts of violence;

c.  fail to properly discipline officers from said police
department who have committed act(s) of false arrest, fabrication of
evidence, malicious prosecution, misrepresentation of facts,
significant intrusions to the body of innocent citizens, excessive
force, and/or serious acts of violence;

d.  fail to properly investigate a complaint of false arrest,
fabrication of evidence, malicious prosecution, misrepresentation of
facts, significant intrusions to the body of innocent citizens,

excessive force, and/or serious acts of violence perpetrated by a
CITY OF CHICAGO police officer upon another;

e.      fail to take proper remedial action against a CITY OF
CHICAGO police officer once it is determined that an act of false
arrest, fabrication of evidence, malicious prosecution,
misrepresentation of facts, significant intrusions to the body of
innocent citizens, excessive force, and/or serious acts of violence has
been committed by said officer upon another;

f.      allow misconduct to occur in various types and severity such
that police officers believe that they can engage in false arrest,
fabrication of evidence, malicious prosecution, misrepresentation of
facts, significant intrusions to the body of innocent citizens,
excessive force, and/or serious acts of violence without
repercussions and/or significant repercussions;

g.      fail to provide adequate sanctions/discipline to officers who
commit false arrest, fabrication of evidence, malicious
prosecution, misrepresentation of facts, significant intrusions to the body of
innocent citizens, excessive force, and/or serious acts of violence,
such that a permissive atmosphere exists among officers wherein
they believe that they will not be disciplined (or significantly
disciplined) for engaging in such behavior;

h.      fail to provide adequate sanctions/discipline to officers who
falsify police reports, investigations and/or internal investigations,
causing said officers to believe that they can manufacture evidence
which will cause them to not be disciplined or significantly
disciplined for engaging in illegal behavior, *inter alia* false arrest,
fabrication of evidence, malicious prosecution, misrepresentation of
facts, significant intrusions to the body of innocent citizens,
excessive force, and/or serious acts of violence;

i.      fail to provide adequate sanctions/discipline to officers who
falsify police reports, investigations and/or internal investigations,
causing said officers to believe that they can manufacture evidence
which will cause them to not be disciplined or significantly
disciplined for engaging in behavior which violates the rules,
policies and/or procedures of the CITY OF CHICAGO police
department;

j.      fail to properly investigate officers who falsify police
reports, investigations and/or internal investigations, causing said
officers to believe that they can manufacture evidence which will
cause them to not be disciplined or significantly disciplined for

13

engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

k.      fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

l.      fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

m.      fail to properly investigate officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

n.      fail to take proper remedial action with officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

o.      fail to provide proper training to prevent officers from falsifying police reports, falsely charging innocent citizens, committing false arrest, fabricating evidence, malicious prosecuting others, misrepresenting facts, causing significant intrusions to the body of innocent citizens, using excessive force, and/or committing serious acts of violence, and violating the rules, policies and procedures of the CITY OF CHICAGO police department.

p.      fail to properly investigate, take remedial action, sanction and/or discipline officers who plant drugs, steal money and/or coerce

14

civilians to commit criminal offenses, and officers that falsify police reports regarding same;

q.      fail to properly investigate, take remedial action, sanction and/or discipline officers who participate in criminal activity with others, and officers that falsify police reports regarding same.

65.     This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

66.     A code of silence exists among officers of the Defendant Municipality.  This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct).  This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

## A.  CHICAGO DEPARTMENTAL INVESTIGATIONS RELATIVE TO THE MISCONDUCT OF BLACK, FLAGG, JONES AND HAYNES WERE INSUFFICIENT

67.     COREY FLAGG, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

68.     COREY FLAGG has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

69.     EURAL BLACK, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

70.     BRODERICK JONES, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

71.     DAREK HAYNES has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

72.     DAREK HAYNES, prior to being charged of criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

## B.  SPECIAL OPERATIONS OFFICERS

73.     Significant to the conduct of DEFENDANT OFFICERS #1 is the conduct of other Chicago officers who have engaged in similar activity.  Many other Chicago Officers have engaged in similar acts of misconduct (and criminal activity).  That this conduct has been taking place for such a long period of time demonstrates that supervisory and otherwise, high ranking officials of the City of Chicago, permit such activity to occur, turning a blind eye by quietly acquiescing to the misconduct of Chicago police officers.  The examples set forth in this section are illustrative of this phenomenon.

74.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that received at least ten civilian complaints lodged against them.

75.     The CITY OF CHICAGO possesses the names of the 662 police officers that have received at least ten civilian complaints lodged against them, between the years 2001 and 2006.

76.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that worked in a unit called "Special Operations," that received at least ten civilian complaints lodged against them (these officers shall be referred to, herein, as "Special Operations Officers").

77.     The civilian complaints lodged against the Special Operations Officers have not been properly investigated by the Chicago Police Department.

78.     There are at least four police officers who worked in the Special Operations Section of the Chicago Police Department who have received at least 50 complaints of misconduct.

79.     Within the last four years, six police officers who were members of the Special Operations Section of the City of Chicago have been indicted for robbing and kidnapping individuals.

80.     There are ten police officers who worked in the Special Operations Section who received a combined total of 408 complaints of misconduct (filed with the Office of Professional Standards).  With regard to those 408 complaints, only three were sustained.

81.     Of the ten Special Operations Officers that received a combined total of 408 complaints, one officer, who was accused of misconduct 55 times, has never had a complaint sustained against him.

82.     A proximate cause of the disregard that the SOS officers had for the rights of citizens was the misconduct of DEFENDANT OFFICERS #1.  By noticing that other officers can "get away" with acts of misconduct towards citizens, without discipline, DEFENDANT OFFICERS #1 engaged in the misconduct alleged in this complaint.

### C.   OFFICE OF PROFESSIONAL STANDARDS (OPS) AND THE OFFICE OF INTERNAL AFFAIRS

83.     Less then one percent of the charges of misconduct that have been lodged against Chicago Police Officers, through the Office of Professional Standards (hereinafter "OPS"), over the last ten years, have resulted in a "sustained finding" against said officer.

84.     The OPS is fully funded by the City of Chicago.

85.     The OPS, over the last 20 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

86.     Over the last 10 years, there has not been an entity and/or agency not employed by the City of Chicago, which has reviewed the decisions of the OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by the OPS.

87.     Over the last 20 years, there has not been an entity and/or agency not employed by the City of Chicago, which has reviewed the decisions of the OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by the Chicago Police Department.

88.     Over the last 20 years, there has not been an entity and/or agency not employed by the City of Chicago, which has reviewed the work performed by the OPS to determine whether the OPS is properly investigating the complaints of misconduct of Chicago Police Officers.

89.     Due to the intimate connection between the OPS and the Mayor of the City of Chicago, as well as other politicians of the City of Chicago, there is a lack of independent review of misconduct of Chicago Police Officers.

90.     For example, Officer Raymond Piwnicki obtained 56 complaints against him within seven years and failed to receive meaningful discipline for any act of misconduct.

91.     Officer Rex Hayes received over 65 complaints of misconduct lodged against him, as well as ten lawsuits, amounting to over 2.5 million dollars that had to be paid out of City tax dollars as a result of the litigation.

92.     It is due to the lack of proper review and low rate of sustained OPS findings that the DEFENDANT OFFICERS to this cause believed that they can engage in the conduct alleged in this complaint without fear of discipline and/or punishment.

93.     There is similar statistical evidence relative to the low rate of sustained findings from the office of Internal Affairs.   It is due to the lack of proper review and low rate of sustained

Internal Affair findings that the DEFENDANT OFFICERS to this cause believed that they can engage in the conduct alleged in this complaint without fear of discipline and/or punishment.

### D.  MISCELLANEOUS FACTS REGARDING *MONELL* LIABILITY

94.     In the year of 2000, a resolution was submitted to City Council stating, in part, that Chicago Police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable for misconduct.

95.     William M. Beavers was an Alderman for the City of Chicago.  In the year 2000, he was Chairman of the Committee on Police and Fire of the Chicago City Council.

96.     Alderman Beavers submitted a resolution to City Council for the City of Chicago, which stated, among other things, that there exists "an environment where police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable even in instances of egregious misconduct."

97.     Failure to recognize the importance of the Beavers Resolution is a proximate cause to the acts of misconduct of the DEFENDANT OFFICERS to this cause as, as alleged in this complaint).   Based on this lack of recognition, the DEFENDANT OFFICERS believed that they can engage in acts of misconduct without being disciplined and/or punished.

98.     Judge Holderman is a Federal Judge presiding in the Northern District of Illinois.

99.     Judge Holderman wrote a legal opinion in *Garcia v. City of Chicago*, 2003 U.S. Dist., LEXIS, 16565 (N.D. Ill. Sep., 19, 2003).

100.    In the legal opinion authored by Judge Holderman, he stated, in significant part, that the City's police abuse investigations were incomplete, inconsistent, delayed, and slanted in favor of the officers.

101.    Failure to recognize the importance of the Judge Holderman's decision is a proximate

cause to the acts of misconduct of the DEFENDANT OFFICERS to this cause as, as alleged in

this complaint).   Based on this lack of recognition, the DEFENDANT OFFICERS believed that

they can engage in acts of misconduct without being disciplined and/or punished.

## E.  BRAINMAKER

102.    In 1995, the City of Chicago became aware of the BrainMaker program.

103.    "BrainMaker" is a software product which can be used as an assistive device to forecast

which officers on the police force are potential candidates for misbehavior.

104.    The Department's Internal Affairs Division used BrainMaker to study 200 officers who

had been terminated for disciplinary reasons and developed a database of patterns of

characteristics, behaviors and demographics found among the 200 police officers.

105.    The purpose of this study was to try to predict and/or understand the misbehavior of

Chicago Police Officers.

106.    BrainMaker compared current officers against the pattern gleaned from the 200 member

control group and produced a list of officers who, by virtue of matching the pattern or sharing

questionable characteristics, were deemed to be "at risk."

107.    BrainMaker was used to study the records of 12,500 police officers (records that included

such information as age, education, sex, race, number of traffic accidents, reports of lost

weapons or badges, marital status, performance reports and frequency of sick leaves).

108.    The results of the BrainMaker study demonstrated that there were 91 at-risk Chicago

Police Officers.  Of those 91 people, nearly half were found to be already enrolled in a

counseling program founded by the personnel department to help officers that were found to

have engaged in acts of misconduct.

109.     Terry Heckart, a graduate student at Ohio's Bowling Green State University,

recommended BrainMaker to the OPS and/or the Office of Internal Affairs.

110.     Notwithstanding the assistance that BrainMaker provided to the City of Chicago, the

City, through its agents, abandoned the project, further demonstrating the inherent difficulty in

having the City of Chicago police itself as well as the City's desire (through senior level

officials) to stick its head in the sand and ignore the misconduct of Chicago officers.

111.     The failure of senior officials to use and/or recognize the importance of the use of

BrainMaker proximately caused the acts of misconduct of the DEFENDANT OFFICERS, as

alleged in this complaint.

## COUNT I – RICO

112.     PLAINTIFFS re-allege paragraphs 1 – 111 as though fully set forth herein.

113.     The actions of the DEFENDANT OFFICERS #1, collectively and through a common

scheme to defraud, caused PLAINTIFFS to this action to suffer a business/financial loss.

114.     The predicate acts for this cause of action are demonstrated by the fact that

DEFENDANT OFFICERS #1 have engaged in the same scheme, as alleged above, on at least 10

occasions.

115.     The aforementioned actions of DEFENDANT OFFICERS #1 were the direct and

proximate cause of the violations set forth above.

116.     As a direct and proximate result of the racketeering violations described above,

PLAINTIFFS have been injured in their business and/or property.

WHEREFORE, PLAINTIFFS demand treble damages, jointly and severally, from

DEFENDANT OFFICERS #1, punitive damages, costs and attorneys' fees.  PLAINTIFFS also

demand whatever additional relief this Court deems equitable and just.

## COUNT II
## § 1983 Conspiracy Claim

117.    PLAINTIFFS re-allege paragraphs 1-111 as though fully set forth herein.

118.    The aforementioned actions of DEFENDANT OFFICERS #1 were the direct and proximate cause of the violations of the laws set forth in the United States Constitution, *inter alia,* the Fourth Amendment (false arrest, unreasonable seizure) and Fourteenth Amendment (deprivation of due process).

WHEREFORE, PLAINTIFFS demand compensatory damages, jointly and severally, from DEFENDANT OFFICERS #1, punitive damages and attorneys' fees and costs. PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

## COUNT III
## § 1983 False Arrest Claim

119.    PLAINTIFFS (not LARRY WILKINS[2]) re-allege paragraphs 1 – 111 as though fully set forth herein.

120.    The actions of the DEFENDANT OFFICERS #1 and #2 caused the arrests and/or seizures of the PLAINTIFFS without probable cause to believe that PLAINTIFFS had committed criminal activity.  DEFENDANT OFFICERS #1 and #2 conduct was in violation of the Fourth Amendment to the United States Constitution.

121.    The aforementioned actions of DEFENDANT OFFICERS #1 and #2 were the direct and proximate cause of the Constitutional violations set forth above.

WHEREFORE, PLAINTIFFS demand compensatory damages from DEFENDANT OFFICERS #1and #2, punitive damages, costs and attorneys' fees.  PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

---

[2] See *infra* for allegations regarding Plaintiff Larry Wilkins.

## COUNT IV
## Fourteenth Amendment Due Process Claim

122.    PLAINTIFFS re-allege paragraphs 1 – 111 as though fully set forth herein.

123.    DEFENDANT OFFICERS #1 violated fundamental constitutional rights possessed by PLAINTIFFS, as protected by the Constitution of the United States, Fourteenth Amendment.

WHEREFORE, PLAINTIFFS demand compensatory damages from DEFENDANT OFFICERS #1, punitive damages, costs and attorneys' fees.  PLAINTIFFS also demand compensatory damages against the CITY OF CHICAGO, costs and attorneys' fees and demand whatever additional relief this Court deems equitable and just.

## COUNT V
## §1983 Excessive Force

124.    PLAINTIFFS re-allege paragraphs 1 – 111 as though fully set forth herein.

125.    The actions of DEFENDANT OFFICERS #1 amounted to an excessive use of force onto the PLAINTIFFS.  This conduct violated PLAINTIFFS' Fourth Amendment right to be free from unreasonable seizure.

126.    The aforementioned actions of said officers were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, PLAINTIFFS demand compensatory damages from DEFENDANT OFFICERS #1.  PLAINTIFFS also demand punitive damages, costs and attorneys' fees against said DEFENDANTS.  PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

## COUNT VI – *Monell*

127.    PLAINTIFFS re-allege paragraphs 1 – 111 as though fully set forth herein.

128.     As a direct a proximate result of the aforementioned acts and omissions by Defendant CITY OF CHICAGO there existed a custom, practice, policy, and/or pattern, either implicit or explicit by the CITY OF CHICAGO in which officers were not held accountable for their wrongful and/or illegal acts.

129.      Said custom, practice, policy, and/or pattern by the CITY OF CHICAGO encouraged, endorsed, were willfully ignorant to, or otherwise promoted said wrongful acts by DEFENDANT OFFICERS #1 and #2.

130.     As a direct and proximate result of the aforesaid custom, practice, policy and/or pattern, either implicit or explicit by the CITY OF CHICAGO, PLAINTIFFS, were injured in a personal and pecuniary manner.

        WHEREFORE, PLAINTIFFS demand compensatory damages, costs and attorneys' fees against the CITY OF CHICAGO for the constitutional deprivations caused by the custom, pattern and practice of said municipality.  PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

## COUNT VII
## §1983 False Arrest

131.     Plaintiff LARRY WILLKINS re-alleges paragraphs 1 – 111 as though fully set forth herein.

132.     The plaintiff, LARRY WILIKNS was falsely arrested, detained and/or seized on August 6, 2004 by DEFENDANT OFFICERS #2 and COREY FLAGG

133.     COREY FLAGG undertook these activities on behalf of and as an agent for the illegal enterprise, to wit: DEFENDANT OFFICERS #1.

134.     LARRY WILKINS, as alleged, was formally arrested and imprisoned for approximately 8 months.

135.     The aforementioned actions of said officers were the direct and proximate cause of the Constitutional violations set forth above

WHEREFORE, Plaintiff LARRY WILKINS demands compensatory damages from all DEFENDANT OFFICERS.  Plaintiff LARRY WILKINS also demands punitive damages, costs and attorneys' fees against said DEFENDANTS.  Plaintiff LARRY WILKINS also demands whatever additional relief this Court deems equitable and just.

**COUNT VIII**
**§1983 False Arrest - Conspiracy**

136.     Plaintiff LARRY WILKINS re-alleges paragraphs 1 – 111 as though fully set forth herein.

137.     DEFENDANT OFFICERS #2 collaborated in conspiracy with each other, along with COREY FLAGG, to arrest LARRY WILKINS and the other PLAINTIFFS to this cause.  These officers knew, on the date of the arrest, that guns and drugs were planted on LARRY WILKINS and did nothing.  These same officers also knew that there was no legal basis (probable cause) to detain and/or seize LARRY WILKINS and the other PLAINTIFFS to this cause.

138.     The collaboration between, *inter alia*, DEFENDANT OFFICERS #2 and COREY FLAGG (meaning specific communication between the officers) occurred on August 6, 2004 and thereafter.  The collaboration was designed to ensure that LARRY WILKINS would be criminally charged with possession of cocaine and gun possession, even though these items were planted on LARRY WILKINS.

139.     DEFENDANT OFFICERS #2 and COREY FLAGG collaborated in the traditional "code of silence" used by Chicago Police Officers for the purpose of helping each other when illegal activity is committed by Chicago officers.

140.     DEFENDANT OFFICERS #2 and COREY FLAGG knew that there was no probable

cause to arrest LARRY WILKINS as LARRY WILKINS did not possess contraband on said

date.  Notwithstanding their knowledge, these officers collectively and in conspiracy,

participated in the arrest of LARRY WILKINS, causing LARRY WILKINS to be in custody for

approximately 8 months.

141.     LARRY WILKINS was released after an approximate 8-month jail term.  Upon release,

the charges relative to the August 6, 2004 arrest were dismissed.

142.     COREY FLAGG undertook the activities referenced in this count on behalf of and as an

agent for the illegal enterprise, to wit: DEFENDANT OFFICERS #1.

143.     The actions of the DEFENDANT OFFICERS #2 and COREY FLAGG amount to an

unreasonable seizure of LARRY WILKINS.  This conduct violated LARRY WILKINS'S Fourth

Amendment right to be free from unreasonable seizure and proximately caused his incarceration.

144.     The aforementioned actions of DEFENDANT OFFICERS #2 and COREY FLAGG were

the direct and proximate cause of the constitutional violations set forth above.

       WHEREFORE, Plaintiffs demand compensatory damages from all DEFENDANT

OFFICERS.  Plaintiffs also demand punitive damages, costs and attorneys' fees against said

DEFENDANTS.  Plaintiffs also demand whatever additional relief this Court deems equitable

and just.

## COUNT IX
### §1983 Deprivation of Due Process

145.     Plaintiff LARRY WILKINS re-alleges paragraphs 1 – 111 as though fully set forth

herein.

146.     DEFENDANT OFFICERS #2 collaborated in a conspiracy with each other, along with COREY FLAGG, to arrest LARRY WILKINS.  These officers knew, on the date of the arrest, that guns and drugs were planted on LARRY WILKINS but did nothing.

147.     The collaboration between, *inter alia*, DEFENDANT OFFICERS #2 and COREY FLAGG (meaning specific communication between the officers) began on August 6, 2004 and thereafter.  The collaboration was designed to ensure that LARRY WILKINS would be criminally charged with possession of cocaine and gun possession, even though these items were planted on LARRY WILKINS.

148.     DEFENDANT OFFICERS #2 and COREY FLAGG collaborated in the traditional "code of silence" used by Chicago Police Officers for the purpose of helping each other when illegal activity is committed by Chicago police officers.

149.     DEFENDANT OFFICERS #2 and COREY FLAGG knew that there was no probable cause to arrest LARRY WILKINS, as LARRY WILKINS did not possess contraband on said date.  Notwithstanding their knowledge, these officers collectively and in conspiracy, participated in the arrest of LARRY WILKINS, causing LARRY WILKINS to be in custody for approximately 8 months.

150.     LARRY WILKINS was released after an approximate 8-month jail term.  Upon release, the charges relative to the August 6, 2004 arrest were dismissed.  This term of incarceration, along with the malevolent acts of DEFENDANT OFFICERS #2 and COREY FLAGG violated fundamental constitutional rights possessed by PLAINTIFF LARRY WILKINS.

151.     COREY FLAGG undertook the activities referenced in this count on behalf of and as an agent for the illegal enterprise, to wit: DEFENDANT OFFICERS #1.

152.    The actions of DEFENDANT OFFICERS #2 and COREY FLAGG deprived LARRY WILKINS of the rights guaranteed to LARRY WILKINS by the 14th Amendment to the United States Constitution.

153.    The aforementioned actions of DEFENDANT OFFICERS #2 and COREY FLAGG were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, Plaintiff LARRY WILKINS demands compensatory damages from all DEFENDANT OFFICERS.  Plaintiff LARRY WILKINS also demands punitive damages, costs and attorneys' fees against said DEFENDANTS.  Plaintiff LARRY WILKINS also demands whatever additional relief this Court deems equitable and just.

## COUNT X
## 745 ILCS 10/9-102 Claim Against the CITY OF CHICAGO

154.    PLAINTIFFS re-allege paragraphs 1-111 as though fully set forth herein.

155.    DEFENDANT CITY OF CHICAGO is the employer of the all of the DEFENDANT OFFICERS (DEFENDANT OFFICERS #1 and DEFENDANT OFFICERS #2) alleged above.

156.    All of the DEFENDANT OFFICERS as alleged above committed the acts under color of law and in the scope of their employment as employees for the CITY OF CHICAGO.

WHEREFORE, should any of the DEFENDANT OFFICERS be found liable for any of the alleged counts in this cause, PLAINTIFFS demand that, pursuant to 745 ILCS 10/9-102, the CITY OF CHICAGO pay them any judgment obtained against said DEFENDANT OFFICERS as a result of this complaint.

## COUNT XI
## Plaintiff LARRY WILKINS § 1983 Equal Protection Claim Class-of-One

157.    Plaintiff LARRY WILKINS re-alleges paragraphs 1 -111 as though fully set forth herein.

158.     The DEFENDANT OFFICERS #2 and COREY FLAGG failed in their duty to enforce the laws equally and fairly against PLAINTIFF LARRY WILKINS, therefore violating the Equal Protection Clause.

159.     In connection with the Equal Protection Claim, PLAINTIFF LARRY WILKINS is in a class called "class-of-one." The DEFENDANT OFFICERS #2 and COREY FLAGG intentionally treated him differently than other individuals, similarly situated, in that they planted and/or failed to intervene in the planting of contraband onto the person of LARRY WILKINS, proximately causing the charging of a criminal action against LARRY WILKINS.

160.     Other arrestees of City of Chicago police officers, who are not exposed to police misconduct, do not have contraband placed on their person and have fictitious evidence developed against them for prosecution in a criminal cause.

161.     The DEFENDANT OFFICERS #2 and COREY FLAGG acted with discriminatory intent by treating PLAINTIFF LARRY WILKINS differently, trying to cause further injury to PLAINTIFF LARRY WILKINS.

162.     The actions of DEFENDANT OFFICERS #2 and COREY FLAGG violated the Equal Protection Clause, specifically, by way of the "class-of-one" distinction developed by federal common law.

163.     The aforementioned actions of said officers were the direct and proximate cause of the constitutional violations set forth above.

164.     The actions of DEFENDANT OFFICERS #2 and COREY FLAGG caused LARRY WILKINS to suffer greatly, including, but not limited to, a significant period of incarceration, due to the pre-trial detention of LARRY WILKINS.

WHEREFORE, Plaintiff LARRY WILKINS demands compensatory damages from DEFENDANT OFFICERS #2 and COREY FLAGG, punitive damages and attorneys' fees and costs. Plaintiff LARRY WILKINS also demands whatever additional relief this Court deems equitable and just.

**COUNT XII**
**All PLAINTIFFS' § 1983 Equal Protection Claim "Class-of-One"**

165. PLAINTIFFS re-allege paragraphs 1 through 111 as though fully set forth herein.

166. DEFENDANT OFFICERS #1 and #2 failed in their duty to enforce the laws equally and fairly against PLAINTIFFS, therefore violating the Equal Protection Clause.

167. In connection with the Equal Protection Claim, PLAINTIFFS are in a class called "class-of-one." DEFENDANTS OFFICERS #1 and #2 intentionally treated them differently than other individuals, similarly situated.

168. Other individuals that are similarly situated to PLAINTIFFS are those that when coming into contact with police are processed normally and not, *inter alia,* asked for money, assaulted, intimidated, abused, falsely arrested, threatened, extorted (i.e. Larry Wilkins and/or another family member, will be arrested if the family does not tender money to the police).

169. PLAINTIFFS were treated differently in that they were assaulted, intimated, abused, falsely arrested, threatened, extorted by DEFENDANTS OFFICERS #1 throughout the time periods referenced in this complaint.

170. PLAINTIFFS were treated differently in that they were falsely arrested, manhandled and otherwise abused by DEFENDANT OFFICERS #2 and CORY FLAGG on August 6, 2004.

171. DEFENDANT OFFICERS #1 and #2 acted with discriminatory intent by treating PLAINTIFFS differently.

172.    DEFENDANT OFFICERS #1 and #2 conspired to, and actually did cover up for their

own misdeeds.

173.    The actions of DEFENDANT OFFICERS #1 and #2 violated the Equal Protection

Clause, specifically, by way of the "class-of-one" distinction, developed by federal common law.

174.    The aforementioned actions of said officers were the direct and proximate cause of the

constitutional violations set forth above.

    WHEREFORE, PLAINTIFFS demand compensatory damages from all DEFENDANT

OFFICERS, punitive damages and attorneys' fees and costs.  PLAINTIFFS also demand

whatever additional relief this Court deems equitable and just.


PLAINTIFFS demand trial by jury.



                        Respectfully Submitted,

                        s/ Blake Horwitz
                        Blake Horwitz
                        One of the Attorneys for Plaintiffs


THE LAW OFFICES OF BLAKE HORWITZ, LTD.
155 N. Michigan Ave., Suite 723
Chicago, IL  60601
Tel: (312) 616-4433
Fax: (312) 565-7173