

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LANELL CRAFT, CURTIS FLOWERS, JOE GANT, SHARON WILKINS, individually, and on behalf of RASHI GANT, MARCUS JORDAN, DAVID STEWART, LARRY WILKINS, MARY WILKINS, SHARON GANT, JOSEPH WILKINS, and HENRY-ELLA WILLIAMS, <br><br> PLAINTIFFS, <br><br> vs. <br><br> COREY FLAGG, EURAL BLACK, DAREK HAYNES, BRODERICK JONES, SARGEANT ROBERT O'NEIL, OFFICER WILLIAM MULLEN STAR NO. 12673, OFFICER SHANNON STAR NO. 16066, OFFICER HEIN STAR NO. 19700, OFFICER WASZAK STAR NO. 19258, OFFICER WOJTAN STAR NO. 8548, OFFICER SANELLO 17661, and the CITY OF CHICAGO, <br><br> DEFENDANTS. | No. 06 C 1451 <br><br> JUDGE ROBERT W. GETTLEMAN <br><br> MAGISTRATE JUDGE ARLANDER KEYS |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Plaintiffs' Motion for Release of Internal Affairs and/or OPS Records for use in *Almaraz, et al. v. City of Chicago*, and Plaintiffs' Motion to Allow BrainMaker Discovery, which was filed under seal. For the reasons set forth below, Plaintiffs' Motions are Denied.

**Background Facts**

On March 16, 2006, Plaintiffs filed a twelve count complaint against the Officer Defendants and the City of Chicago, alleging violations of the Racketeering Influence Corrupt Organizations Act ("RICO"); conspiracy under 42 U.S.C. § 1983;

false arrest and excessive force under the Fourth Amendment of the United States Constitution; substantive due process violations under the Fourteenth Amendment; conspiracy to commit false arrest; a § 1983 equal protection class of one claim; and *Monell* and indemnity claims against the City of Chicago.

Plaintiffs allege that the Defendant Officers lured unsuspecting drug dealers to participate in drug transactions, and then stole their money and drugs in phony sting operations. The Defendant Officers allegedly utilized false arrest, excessive force, and extortion to convince civilians that they would be charged with crimes if they did not pay the money demanded by the Defendant Officers. For example, Plaintiffs allege that Defendant Officer Corey Flagg entered their homes, handcuffed innocent family members, threw them to the ground, and then coerced money from them, under the threat of arrest and charges if they did not pay. Since Plaintiffs filed this suit, several of the Officer Defendants have pled guilty to, or have been found guilty of federal criminal charges for activities similar to those described in the Complaint.

Plaintiffs have filed a flurry of discovery motions since the inception of this suit. The discussion in this Opinion is limited to Plaintiffs' counsel's attempt to utilize in other matters documents obtained in this lawsuit under the auspices of a protective order, and to obtain discovery on the Chicago Police Department's long-abandoned BrainMaker program.

## A. Plaintiffs Cannot Utilize Discovery Obtained Under a Protective Order in this Case in *Almaraz*

Plaintiff seeks to release the Internal Affairs and OPS records that they obtained in this case-- including the Complaint Registers (CR) involving Defendant Officers Flagg, Jones, Haynes, and Black- for use in *Almaraz v. City of Chicago, et al.*, Case No. 07 C 6134, a case currently pending before the Honorable William T. Hart, and in *Diaz v. Haleas, et al.*, Case No. 08 C 805, a case pending before Judge Wayne Anderson. The Motion is Denied.

In their effort to obtain the CR for the Officer Defendants, as well as related Internal Affairs and OPS records, Plaintiffs proposed that this evidence be produced under the auspices of a Protective Order. *See* Pls. 9/21/06 Mot. For Prot. Order. The Plaintiffs' motive in submitting the proposed Protective Order was to defuse Defendants' objections to producing such evidence, thereby expediting the flow of discovery. Plaintiffs' Proposed Protective Order, which was adopted by the Court, specifically provides that this evidence is to "be used by the parties to this cause *solely for the purpose of this lawsuit* and for no other purpose." *Craft v. Flagg*, Case No. 06 C 1451, 9/25/06 Order (emphasis added.)

Plaintiffs' counsel now contends that, despite the assurances made in the Protective Order, his other clients- Mr. Almaraz and Mr. Diaz- need this evidence to support their own

3

*Monell* claims against the City. Neither the Plaintiffs nor the Defendant Officers involved in the instant matter are litigants in *Almaraz* or *Diaz*. The Court finds that Plaintiffs' counsel has offered no compelling reason to set aside the Protective Order and make available the evidence in question.

Notably, Judge Hart has recently granted the City's Motion to Bifurcate the *Almaraz* Plaintiffs' *Monell* claims from their claims against the named individual defendants. *See Almaraz*, No. 07 C 6134, 10/9/08 Memorandum Opinion and Order. In evaluating the City's Motion to Bifurcate, Judge Hart noted that the evidence under a protective order in this case, which includes statistical data and related evidence, "is not necessary for determining whether bifurcation of the Monell claims is appropriate." *Id.* at 3, n. 5. Similarly, the City filed a Motion to Bifurcate in *Diaz* on July 22, 2008, which is currently pending before Magistrate Judge Jeffrey Cole[1]. Judge Cole has not yet ruled on that Motion, but the City has argued that the bifurcation issue in *Diaz* is substantially similar to that resolved in the City's favor by Judge Hart in *Almaraz*, and the Court agrees that the evidence Plaintiff is seeking has little bearing on the issue of whether bifurcation is appropriate in *Diaz*.

---

[1] On July 31, 2008, Judge Anderson referred the matter to Magistrate Judge Cole.

4

Having determined that the evidence in this case will not substantially impact the pending bifurcation motion, the Court next turns to counsel's claim that the evidence is necessary to support his clients' *Monell* claims. With regard to the *Monell* claims, the Court finds that it is unlikely that counsel will be permitted to conduct such discovery in either *Almaraz* or *Diaz*.

Typically, courts that choose to grant Motions to Bifurcate *Monell* claims do so as a matter of efficiency. Pursuant to *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), *Monell* claims against a municipality disappear if the claims against the individual police officers, upon whom entity liability is predicated, fail[2], thereby obviating the need for discovery on the *Monell* claims. In a bifurcated case, there exists a very real possibility that the evidence in question would never be relevant or discoverable, if the Officer Defendants prevail .

Here, Judge Hart has already determined that bifurcation is appropriate. And while the *Diaz* court has yet to enter a ruling on the issue, the City has offered a proposed stipulation in an effort to encourage the court to grant bifurcation. Specifically, the City of Chicago has offered Stipulations to Entry of Judgment Against Defendant City of Chicago in both cases in the event that the Officer Defendants are found liable of the

---

[2] This statement is only true if the *Diaz* Motion to Bifurcate is granted. In addition, well-recognized exceptions to this rule include when the individual defendant is shielded from liability by qualified immunity.

5

alleged predicate acts. With these Stipulations in place, there exists only the slightest probability that Plaintiffs' counsel will ever be entitled to such evidence, as these cases will likely be fully resolved without the need for discovery on the Monell issues. *Grant v. City of Chicago*, 2006 WL 328265, at *1, 3 (N.D. Ill. Feb. 10, 2006) (barring trial of Monell claims where the City agreed to the entry of judgment against it.)

These Stipulations, typically offered over a plaintiff's objections, have generated a fair amount of controversy in this district. See *Elrod v. City of Chicago*, 2007 WL 3241352, at *4 (N.D. Ill. Nov. 1, 2007); Nevertheless, despite a plaintiff's preference for a court order finding liability over a stipulation to judgment, the plaintiff has no standing to demand his day in court once he has received his entire legal remedy. See *Almaraz*, 10/9/08 Memorandum Opinion and Order at p. 10 (accepting the City's stipulation.)

In short, the Court finds that Plaintiffs' counsel has failed to justify disregarding the protective order in this case, at this time. The detailed statistical evidence has no bearing upon the remaining Motion to Bifurcate, and it is unlikely that Monell discovery will take place in either *Almaraz* or *Diaz*. The Court acknowledges, however, that the *Diaz* court has yet to rule on the City's Motion to Bifurcate or comment upon the role of the City's proposed Stipulation. And there are other circumstances, including settlement with the Officer Defendants, which could

require discovery on the *Monell* claims. The Court will not foreclose the possibility that it would consider revisiting the issue in the event that Plaintiffs' counsel can demonstrate a more pressing need for such evidence. The Motion is denied, without prejudice.

**B. Plaintiffs Are Not Entitled To BrainMaker Discovery.**

BrainMaker is a software program, considered at some time in the 1990's by the Chicago Police Department, which would purportedly identify characteristics of individuals that are found in the already existing database for the City of Chicago and "red flag" those individuals as being potentially problematic officers. *See* Pls. Mot. For BrainMaker Discovery Ex. E, *McDorman v. City of Chicago*, No. 05 C 448, Dep. Of Sgt Mary Conley at p. 111. Plaintiffs seek discovery concerning BrainMaker.

Discovery into the BrainMaker program is permissible only if Plaintiffs can demonstrate that it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b). Plaintiffs argue that the Defendant Officers in the case committed horrendous acts, both historically and to the named Plaintiffs, which could have been prevented if the City of Chicago had employed the BrainMaker software program. As such, Plaintiffs argue, the City's failure to utilize this program is evidence of their deliberate indifference.

The Court disagrees. "A finding of deliberate indifference requires a showing that the officials were aware of a substantial

risk of serious injury . . . but nevertheless failed to take appropriate steps to protect [an individual] from a known danger." *Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000). "The existence or possibility of other better policies which might have been used does not necessarily mean that defendant was being deliberately indifferent." *Id*.

Plaintiffs point to a bevy of statistical data regarding the conduct of and complaints lodged against the Defendant Officers, and note that the City of Chicago Police Department's ("CPD") current deterrence and detection systems failed to properly highlight and eliminate these officers as risks. Clearly, the failings of the CPD's current deterrence and detection systems are relevant to the issues presented in this litigation. The United States Supreme Court has found that:

> [i]f a program does not prevent constitutional violations, municipal decision makers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action-the 'deliberate indifference necessary to trigger municipal liability."

*Board of County Copm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997).

But evidence concerning BrainMaker, which was merely considered by the City over a decade ago, sheds little light on the failings of the City's current system. To the contrary, Plaintiffs' arguments make clear that they are attempting to use

8

this evidence in support of a "more or better" argument rejected by other courts. *See Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (rejecting liability for suicide although better procedures might have identified the victim as a risk requiring special procedures.) The United States Supreme Court has stated that such evidence is not probative of deliberate indifference, explaining that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989).

Plaintiffs have requested and received a tremendous volume of evidence in support of their very serious claims against these Defendants. And while the Court recognizes the importance of permitting Plaintiffs the opportunity to substantiate their claims, Plaintiffs' justification for their request for BrainMaker discovery is simply too speculative and too remote to justify requiring the City to expend the considerable amount of time and money necessary to comply with such a request. Notably, despite the fact that Plaintiffs' counsel and other counsel have sought to discover evidence regarding BrainMaker in other cases in this district, they have not been permitted to conduct such discovery. *See Bond v. Uteras, et al.*, 04 C 2617; *McDorman v. City of Chicago, et al.*, 05 C 448; and *Almaraz v. Haleas, et al.*,

07 C 6134.

Finally, the Court cannot help but consider Plaintiffs' counsel's desire to use materials garnered in the course of discovery in the instant case to bolster his clients' positions in other, unrelated cases. The Court is not inclined to require the City to shoulder the burden for counsel's fishing expedition. Therefore, the Court DENIES Plaintiffs' Motion for BrainMaker discovery.

## CONCLUSION

For the reasons set forth above, the Court DENIES without prejudice Plaintiffs' Motion For Release of Internal Affairs and/or OPS Records for Use in *Almaraz et al v. City of Chicago et al*, and DENIES Plaintiffs' Motion for BrainMaker Discovery.

Dated: December 16, 2008    E N T E R:

*Arlander Keys*

ARLANDER KEYS

United States Magistrate Judge

10